KEVIN FLYNN, Petitioner-Appellant, v. TERRY G. HILLARD, Superintendent of the Chicago Police Department, *et al.*, Respondents-Appellees.

First District (4th Division)    No. 1—97—3656

Opinion filed February 18, 1999.

Joel L. Lipman and Joseph V. Roddy, both of Chicago, for appellant.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Valerie Quinn, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

Kevin Flynn, a probationary officer with the City of Chicago's department of police (Department), was terminated by the superintendent of the Chicago police department (Superintendent). Flynn brought an action for administrative review of the Superintendent's decision. The City of Chicago (City) filed a motion to dismiss the case for lack of jurisdiction. The circuit court initially denied the City's motion to dismiss. On the City's motion for reconsideration, the circuit court granted the City's motion and dismissed the case.

Plaintiff was hired by the Department as a probationary police officer on March 18, 1996. Such officers must serve a probationary pe-

riod before obtaining any career-service rights. During this period, probationary officers are evaluated by field training officers and may be terminated for any reason without formal proceedings or a finding of cause.

Flynn asserted that he received a negative evaluation by Officer Thomas Conley after Officer Conley had observed his performance for only four days. On the basis of negative evaluations, Flynn was ordered discharged.

On March 4, 1997, Flynn filed a petition for administrative review alleging that the Superintendent had unlawfully terminated him from his job as a probationary police officer. The complaint alleged that the Department failed to follow its own general and special orders in evaluating his performance and that he received a negative evaluation from an officer who should not have been permitted to evaluate him. He also alleged that he was interrogated about his poor evaluations in violation of his right to counsel under the Chicago Municipal Code (Chicago Municipal Code § 2—84—330 (1990)) and section 3.8 of the Uniform Police Officers' Disciplinary Act (50 ILCS 725/3.8 (West 1996)). The complaint further claimed that Flynn was fired, because he is a homosexual, in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 et seq. (West 1996)) and the City's human rights ordinance.

On May 6, 1997, the City filed a motion to dismiss noting that the Chicago Municipal Code, which confers upon the Superintendent the power to terminate probationary police officers, does not adopt the provisions of the Administrative Review Law (735 ILCS 5/3—101 et seq. (West 1996)); that the Superintendent's decision is not a decision by an administrative agency; and that discretionary decisions of the Superintendent are not subject to administrative review. The City further argued that the special orders of the Department do not create a property right in probationary police officers entitling them to continued employment; that any request by Flynn for mandamus was also improper and should be dismissed; and that the City's Commission on Human Relations has primary exclusive jurisdiction over Flynn's sexual-preference-discrimination claim.

On July 28, 1997, the circuit court held a hearing on the motion to dismiss. The circuit court explained that Flynn's claim should have been brought as a petition for a writ of certiorari rather than as a complaint for administrative review. The City agreed to allow the court to treat Flynn's action as a petition for writ of certiorari. The City then argued that the circuit court lacked jurisdiction to consider Flynn's claim, whether that claim was treated as a complaint for administrative review or a petition for writ of certiorari. The City

explained that the Superintendent has sole discretion to fire probationary police officers, that no evidentiary hearings are held prior to such terminations, that there are no findings of fact or conclusions of law, and that, therefore, there is no record of an inferior tribunal for the circuit court to review, thereby making Flynn's claim inappropriate for consideration either as a writ of *certiorari* or as a complaint for administrative review.

The City described the process by which recommendations are made to the Superintendent as to which probationary officers to terminate. The City explained that the Department had internal special orders that set out the standards for reviewing probationary police officers. These officers are reviewed by field training officers who are experienced police officers who take the probationary police officer around. If problems occur in a probationer's training, a group of officers from the Department reviews the situation and makes recommendations for either additional academic training, field training, or termination. The reviewing officers can interview whomever they think appropriate in making their determination as to whether the problems exhibited by a probationary police officer can be corrected. If the review panel determines that the poor performance will not improve, the probationer will be terminated. The City further explained that the Chicago Commission on Human Relations (the Commission) had exclusive jurisdiction over Flynn's discrimination claim and that Flynn was about to file a complaint with the Commission. In later proceedings, Flynn's counsel confirmed that Flynn had, in fact, filed a complaint against the Superintendent with the Commission.

Flynn argued that the memoranda, special orders, and general orders of the Department formed a sufficient record to permit review; that the Department failed to follow its own internal rules in evaluating him; that the Superintendent is required to follow the Department's rules and regulations; and that it is the circuit court's duty to determine whether the evaluation rules were followed. If such rules were not followed, Flynn argued, the circuit court must reinstate him.

The circuit court denied the City's motion to dismiss on August 1, 1997. The City then filed a motion for reconsideration of that denial and attached, among other documents, a number of Illinois decisions for the circuit court's review. At the hearing held on September 4, 1997, the City argued that the trial court's ruling of August 1, 1997, did not comport with existing case law.

On September 12, 1997, the circuit court granted both the City's motion to reconsider and the motion to dismiss the complaint.

■ In considering a motion to dismiss, all well-pleaded facts are ac-

cepted as true. *Buckner v. O'Brien*, 287 Ill. App. 3d 173, 176, 677 N.E.2d 1363, 1366 (1997). A motion for dismissal should only be granted in those cases where there are no material facts in dispute and defendants are entitled to dismissal as a matter of law. *Frydman v. Horn Eye Center, Ltd.*, 286 Ill. App. 3d 853, 857, 676 N.E.2d 1355, 1359 (1997). On appeal, the reviewing court does not defer to the circuit court's ruling but considers the issue *de novo. Buckner*, 287 Ill. App. 3d at 177, 677 N.E.2d at 1366.

■ Flynn originally filed his complaint for administrative review, and it was agreed that, since this was improper, it would be treated as a writ of *certiorari*. The circuit court then determined that it could not treat Flynn's complaint as an administrative review action, because according to section 10—1—45 of the Illinois Municipal Code (65 ILCS 5/10—1—45 (West 1996)), the Administrative Review Law applies only to decisions by the civil service commission and the police board. The Superintendent's decision to discharge probationary police officers is not reviewable under the Administrative Review Law. *Rochon v. Rodriguez*, 293 Ill. App. 3d 952, 955, 689 N.E.2d 288, 291 (1997).

Flynn argues that whether he labeled his cause of action as a complaint for administrative review, a petition for writ of *certiorari*, or a petition for a writ of *mandamus* is unimportant, because the relief that he is seeking is the same. However, the court in *Rochon* indicated that none of these types of complaints could overcome the fact that the circuit court does not have jurisdiction to hear and reverse the decision of the Superintendent to fire a probationary employee.

Flynn cites *Rochon* as a case nearly identical to the facts of his case. However, *Rochon* involved two probationary employees who were first suspended for misconduct and subsequently fired for the same misconduct. The court in *Rochon* held that the probationary officers' petition for administrative review sufficiently framed the issues such that a justiciable question existed as to whether the Superintendent had imposed a double punishment which contravened the Chicago Municipal Code, thus giving the circuit court subject matter jurisdiction over the probationary officers' petition. Here, the court was faced with a petition that did not identify any legal right purportedly violated by the Department's failure to follow its own special and general orders in conducting performance reviews. *Rochon* stands for the proposition that rules for meting out punishment must be consistent even for probationary employees. Clearly, there is a difference between being fired for misconduct for which one previously had been suspended and being fired for unsatisfactory job performance. Thus, *Rochon* is not applicable to the present case, and the Superintendent has the authority to fire a probationary employee for poor job performance.

■ Flynn claims the Superintendent violated internal orders by allowing someone other than a patrol specialist to evaluate him; in not evaluating him at the required intervals; and "interrogating" him without counsel present. A reading of Special Order 82—25 does not limit the evaluation of probationers to patrol specialists only but, rather, provides that probationary police officers will not work alone and permits the Department to seek evaluations of the officer's performance from any Department member.

■ As to Flynn's right to counsel during his "interrogation," there was no violation of Department rules. Flynn was being questioned about his poor performance evaluations. The right-to-counsel provisions of section 3.8 (50 ILCS 725/3.8 (West 1996)) and the Chicago Municipal Code (Chicago Municipal Code § 2—84—330 (1990)) refer to the right of a police officer to have counsel present during formal questioning when that questioning is part of a disciplinary investigation that could lead to the officer's suspension or discharge for misconduct. This right is not available to Flynn, since he was only being questioned about poor job performance.

Flynn asserts next the circuit court should have heard his claims of civil rights violations because he was terminated for being a homosexual. Such a termination would be a violation of section 2—160—030 (Chicago Municipal Code § 2—160—030 (1990)) and, according to Flynn, a violation of the Illinois Human Rights Act (the Act) (775 ILCS 5/2—102 (West 1996)).

■ The City's human rights ordinance prohibits employment discrimination based upon a person's sexual orientation. Chicago Municipal Code § 2—160—030 (1990). The ordinance provides that the Chicago Commission on Human Relations shall receive, investigate, and prosecute complaints of discrimination under the ordinance. Chicago Municipal Code § 2—160—090 (1990). Thus, the Commission has exclusive jurisdiction over claims arising under the ordinance. Therefore, Flynn must first exhaust his remedies under the ordinance before bringing his discrimination claim to the circuit court. *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 288, 644 N.E.2d 1163, 1165 (1994). Therefore, the circuit court was correct in dismissing his claim under the human rights ordinance.

■ As to Flynn's claim that the Department violated the Act because it discriminated against him on the basis of his sexual orientation, the court lacked jurisdiction to hear Flynn's claim. There is nothing in the Act that prohibits discrimination based upon sexual orientation. See 775 ILCS 5/1—103, 2—101, 2—102 (West 1996).

■ Flynn's final argument is that the Department discriminated against him based on his sexual orientation in violation of the equal

protection clauses of both the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2). However, Flynn never raised any federal equal protection claim in the circuit court. Illinois law is clear that issues not raised in the circuit court are deemed waived and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536, 662 N.E.2d 1248, 1258 (1996), *cert. denied*, 519 U.S. 910, 136 L. Ed. 2d 197, 117 S. Ct. 274 (1996). Therefore, Flynn has waived any federal claim.

As to a state equal protection claim, Flynn did not plead it in his complaint but asserted it in his response to the City's motion to dismiss. Even if this claim had been properly raised by Flynn in his complaint, it should have been brought before the Chicago Commission on Human Relations, since state constitutional claims analogous to claims provided for under the Act must be brought to the Illinois Human Rights Commission. *Bismarck Hotel Co. v. Sutherland*, 175 Ill. App. 3d 739, 749, 529 N.E.2d 1091, 1099 (1988). Only after exhausting his administrative remedies may Flynn seek judicial review.

■ It should be noted that, subsequent to oral arguments in this case, counsel for respondents-appellees sent a letter to the three justices of this panel supplementing and/or clarifying points in response to some questions that were asked during the hearing. We construe this letter to be in the nature of a surrebuttal reply brief, which we shall not consider. This type of conduct shall not be condoned and counsel is exhorted to follow supreme court rules regarding appellate practice. We admonish counsel to reread the supreme court rules as to the appropriate method in presenting arguments to this court and to refrain from this type of practice in the future.

Nonetheless, based upon the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and WOLFSON, JJ., concur.