NOTICE
Decision filed 08/10/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 160239

NO. 5-16-0239

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JOHN JONES and DEBORAH JONES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Richland County. |
| | ) | |
| v. | ) | No. 13-L-21 |
| | ) | |
| PNEUMO ABEX LLC and OWENS-ILLINOIS, INC., | ) | Honorable |
| | ) | William C. Hudson, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Barberis and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, John and Deborah Jones, brought an action against defendants, Pneumo Abex LLC (Abex) and Owens-Illinois, Inc. (Owens-Illinois), among others, to recover for harm that John allegedly suffered as a result of asbestos exposure that occurred while John was employed in construction. Plaintiffs' complaint alleged Abex was responsible for John's injuries because it entered into a civil conspiracy with Johns-Manville and other manufacturers of asbestos-containing products to suppress information about the harmful health effects of asbestos and to falsely assert asbestos exposure was safe. The complaint further alleged that Owens-Illinois entered into the same conspiracy with Owens-Corning Fiberglas Corporation (Owens-Corning), a nonparty in this case. The trial court entered summary judgment in favor of defendants on the civil conspiracy claims. On appeal, plaintiffs argue that the trial court erred in granting summary

1

judgment because genuine issues of material fact exist as to (1) whether defendants entered into a conspiratorial agreement to suppress or misrepresent information about the health hazards of asbestos and (2) whether defendants committed acts in furtherance of such an agreement. For the following reasons, we reverse and remand this cause for further proceedings consistent with this opinion.

¶ 2                               BACKGROUND

¶ 3     The two defendants in this appeal are (1) Abex, a manufacturer of asbestos-containing brake linings, and (2) Owens-Illinois, a manufacturer and distributor of Kaylo, an asbestos-containing insulation, between 1948 and 1958. Plaintiffs' complaint against defendants is based on civil conspiracy. Neither defendant employed John, and plaintiffs' conspiracy claim against Abex does not allege any asbestos exposure directly attributable to Abex. According to plaintiffs' complaint, John contracted lung cancer from his exposure to asbestos-containing insulation during his career in construction, which began in 1969. The complaint asserted John worked with Johns-Manville and Owens-Corning insulation during his construction career.

¶ 4     As to plaintiffs' claim of conspiracy, the complaint alleged that Abex conspired with other manufacturers of asbestos-containing products to falsely assert it was safe for people to work in close proximity to asbestos and to suppress information about the harmful health effects of asbestos exposure. Plaintiffs claim Abex committed numerous tortious acts in furtherance of the conspiracy. Specifically, plaintiffs argue that although Abex was aware of the health hazards of asbestos exposure, it continued making and distributing asbestos-containing products without adequately protecting employees and customers, and it also manipulated the scientific and legal landscape to shield the asbestos industry from liability and ensure continued profitability. The complaint alleged John was injured as a result of this conspiratorial conduct.

2

¶ 5    The complaint identified the following overt acts that were allegedly committed by the companies in furtherance of the conspiracy: (1) selling asbestos products, which were used at John's work, without warning customers of the health hazards of asbestos exposure; (2) failing to warn employees about the health hazards of asbestos exposure; (3) editing and altering reports and drafts of publications initially prepared by Dr. Anthony Lanza, a physician employed by another alleged conspirator, Metropolitan Life Insurance, during the 1930s, which concerned the health hazards of asbestos exposure; (4) entering into a written agreement to suppress the results of research on the health effects of asbestos exposure; (5) obtaining an agreement in the 1930s from the editors of ASBESTOS Magazine, the only trade magazine devoted exclusively to asbestos, that the magazine would not publish articles connecting asbestos exposure to disease and sustaining such agreement into the 1970s; (6) suppressing the dissemination of a 1943 report prepared by Dr. LeRoy Gardner, a former director of the Saranac Laboratory for the Study of Tuberculosis (Saranac Laboratory), in which he was critical of the idea that there was a safe level of asbestos exposure; (7) defeating further study of the health of workers through their control of the Asbestos Textile Institute; (8) editing and altering reports and publication drafts initially prepared by Dr. Arthur Vorwald, a former director at Saranac Laboratory, from 1948 through 1951; (9) suppressing the results of the fibrous dust studies conducted between 1966 and 1974 that concluded asbestos exposure caused lung cancer and mesothelioma; (10) participating in drafting a pamphlet published by the National Insulation Manufacturers Association (NIMA) which purportedly failed to disclose the specific health hazards of asbestos exposure; (11) purchasing asbestos without warning labels from co-conspirators; (12) refusing to warn employees who used asbestos-containing materials in the manufacture of the companies' products; and (13) altering the original report of a study performed by the Industrial Hygiene

3

Foundation to delete all references to the association of asbestosis (scarring of the lungs) and lung cancer. The complaint further alleged that Owens-Illinois engaged in the same conspiracy with Owens-Corning.

¶ 6    In June 2015, Abex filed a motion for summary judgment, asking the trial court to follow *Rodarmel v. Pneumo Abex, L.L.C.*, 2011 IL App (4th) 100463, *Menssen v. Pneumo Abex Corp.*, 2012 IL App (4th) 100904, and *Gillenwater v. Honeywell International, Inc.*, 2013 IL App (4th) 120929, all Fourth District cases that found there was insufficient evidence to show Abex had agreed with other companies to suppress or misrepresent the health hazards of asbestos. In August 2015, Owens-Illinois filed a separate motion for summary judgment, also arguing, in pertinent parts, that there was insufficient evidence to support a finding of conspiracy. Relying on these Fourth District civil conspiracy cases, the trial court granted summary judgment in favor of defendants.

¶ 7    This appeal followed.

¶ 8                                 ANALYSIS

¶ 9    "Civil conspiracy is defined as 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.' " *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) (quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 23 (1998)). To state a claim for civil conspiracy, a plaintiff must allege the existence of an agreement and a tortious act committed in furtherance of that agreement. *Id.*

¶ 10    "Civil conspiracy is an intentional tort and requires proof that a defendant 'knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.' " *Id.* (quoting *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64 (1994)).

4

Accidental, inadvertent, or negligent participation in a common scheme does not result in conspiracy. *Id.* at 133-34. Moreover, mere knowledge of the fraudulent or illegal actions of another does not amount to conspiracy. *Id.* at 134.

¶ 11    Because a conspiracy is almost never susceptible to direct proof, it is usually established by circumstantial evidence and inferences drawn from the evidence, coupled with common sense knowledge of the behavior of persons in similar circumstances. *Id.* However, if a civil conspiracy is shown by circumstantial evidence, that evidence must be clear and convincing. *Id.* Our supreme court has determined that "parallel conduct may serve as circumstantial evidence of a civil conspiracy among manufacturers of the same or similar products but is insufficient proof, by itself, of the agreement element of this tort." *Id.* at 135. Evidence of parallel conduct alone is insufficient to establish a civil conspiracy by clear and convincing evidence. *Id.* at 146.

¶ 12    This appeal is before us on the trial court's grant of summary judgment in favor of defendants. Summary judgment is appropriate only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002). A triable issue precluding summary judgment exists where the material facts are disputed or where the material facts are undisputed but reasonable persons might draw different inferences from those facts. *Morris v. Union Pacific R.R. Co.*, 2015 IL App (5th) 140622, ¶ 23.

¶ 13    In determining whether a genuine issue of material fact exists, the court should construe the pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the nonmoving party, drawing all reasonable inferences in favor of the nonmovant. *Id.*; *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360, 366 (2007). Summary

judgment is a drastic remedy and should only be allowed when a moving party's right is clear and free from doubt. *Morris*, 2015 IL App (5th) 140622, ¶ 22. "The purpose of summary judgment is not to try a question of fact, but to determine if one exists." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). We review a summary judgment ruling *de novo*. *Morris*, 2015 IL App (5th) 140622, ¶ 23.

¶ 14    After careful review, we find the record is replete with genuine issues of material fact from which a trier of fact could reasonably conclude the existence and acts in furtherance of a civil conspiracy. Consequently, the trial court erred in granting summary judgment in favor of defendants and against plaintiffs.

¶ 15    As to Abex, for example, plaintiffs presented evidence that Abex allegedly entered into an agreement with Johns-Manville to suppress or misrepresent information regarding the health hazards of asbestos. Specifically, plaintiffs introduced evidence that Abex signed a 1936 agreement to underwrite experiments with asbestos dust to be performed by Dr. Gardner. Further evidence shows that after Abex received a copy of the 1948 report of Dr. Gardner's dusting experiments, which was published two years after Dr. Gardner's death, Abex returned the report at the request of Johns-Manville's general counsel, Vandiver Brown, who wanted all references to cancers and tumors deleted from the report. Brown felt it would be unwise to have any copies of the draft report outstanding if the final report was to be different in any substantial respect. Plaintiffs also produced evidence that shows Abex asked Brown to act on its behalf at a conference in which the sponsoring companies of Dr. Gardner's experiments agreed to delete any reference to cancer and tumors from the final published report.

¶ 16    Similarly, plaintiffs presented evidence that Owens-Illinois allegedly entered into an agreement with Owens-Corning to suppress information about the hazards of asbestos. Owens-

Corning was formed by Owens-Illinois and Corning Glass in 1938. Plaintiffs presented evidence that Owens-Illinois began manufacturing and selling a thermal insulation product named Kaylo in 1943, and Owens-Illinois continued to sell Kaylo after it received warning that it was potentially a respiratory hazard. One such warning was from Dr. Vorwald, who wrote to Owens-Illinois in 1952 that studies showed "Kaylo dust is capable of producing a peribronchiolar fibrosis typical of asbestosis."

¶ 17 Plaintiffs' evidence indicates Owens-Illinois and Owens-Corning entered into a distributorship agreement in 1953. Under the agreement, Owens-Illinois continued to manufacture Kaylo and Owens-Corning distributed it. This agreement lasted until 1958 when Owens-Illinois sold its Kaylo division to Owens-Corning. Plaintiffs presented evidence that during this agreement, the two companies did not place any warning on Kaylo packaging. Rather, plaintiffs' evidence shows the companies advertised Kaylo as "non-toxic" despite knowing the advertisement was false. Plaintiffs' evidence further indicates the two companies remained close after Owens-Illinois sold its Kaylo division to Owens-Corning in 1958. Owens-Illinois continued to provide warning-free packaging for Kaylo until the late 1960s, and Owens-Illinois maintained a major investment in Owens-Corning into the 1970s. Plaintiffs produced evidence that Owens-Illinois owned over 750,000 shares of Owens-Corning stock as late as 1978. Plaintiffs' evidence also indicates that the profits and earnings of Owens-Corning were a recurrent topic of conversation at Owens-Illinois directors meetings from the 1940s through the 1970s.

¶ 18 The foregoing examples are only a few of the numerous genuine issues of material fact in the record from which a trier of fact could find the elements of civil conspiracy by clear and convincing evidence. When construing the record liberally in favor of plaintiffs, it is possible for

7

a fair-minded trier of fact to find in favor of plaintiffs. We acknowledge that defendants dispute plaintiffs' evidence. At the very least, however, reasonable persons could draw different inferences from the facts of record. At this stage in the litigation, it was error for the trial court to weigh the evidence and grant summary judgment.

¶ 19 The trial court in this case relied on two dispositions rendered by our colleagues in the Fourth District in arriving at its decision to grant summary judgment in favor of defendants. The court cited *Rodarmel*, 2011 IL App (4th) 100463, in support of its decision to grant summary judgment in favor of Abex, concluding "this matter is indistinguishable from *Rodarmel* on the material issues." The court also cited *Gillenwater*, 2013 IL App (4th) 120929, in support of its decision to grant summary judgment in favor of Owens-Illinois, concluding "this matter is indistinguishable from *Gillenwater* on the material issues." There is a fatal flaw in the court's reliance on these two authorities: the action of the trial court at issue in both cases was judgment notwithstanding the verdict (*n.o.v.*), not summary judgment.

¶ 20 In *Rodarmel*, the Fourth District considered whether the agreement between Abex and other asbestos-manufacturing companies to suppress the cancer references in the Saranac publication was a conspiratorial agreement. The court found no evidence that Abex agreed with other companies to suppress or misrepresent the health hazards of asbestos. *Rodarmel*, 2011 IL App (4th) 100463, ¶ 132. Therefore, the court held that Abex was entitled to a judgment *n.o.v.* "because of a lack of clear and convincing evidence on the agreement element of a civil conspiracy." *Id.*

¶ 21 In *Gillenwater*, the Fourth District found there was clear and convincing evidence that Owens-Illinois and Owens-Corning engaged in a conspiracy to conceal that Kaylo dust was potentially a respiratory hazard from 1953 to 1958, during the period of the distributorship

8

between the two companies. *Gillenwater*, 2013 IL App (4th) 120929, ¶ 96. However, the court concluded the conspiracy ended with Owens-Illinois's sale of its Kaylo division to Owens-Corning at the end of the distributorship agreement in 1958. *Id.* ¶¶ 107-08. Because the conspiracy between the two companies ended in 1958, 14 years prior to the plaintiff's alleged injury by Kaylo in 1972, the court affirmed the trial court's grant of judgment *n.o.v.* to Owens-Illinois. *Id.* ¶¶ 107, 118.

¶ 22    In this case, the action is at the summary judgment stage, *not* the judgment *n.o.v.* stage as in the Fourth District cases. Plaintiffs were not required to prove a conspiracy by clear and convincing evidence in order to survive a motion for summary judgment. Rather, plaintiffs were merely required to present sufficient facts, when viewed in the light most favorable to plaintiffs, from which a trier of fact could find the existence of a conspiracy by clear and convincing evidence. At this stage of the litigation, there are genuine factual issues from which a trier of fact may conclude by a clear and convincing standard the elements of civil conspiracy. These questions should have been considered by the trier of fact.

¶ 23    In sum, there are no definitive answers to the disputed questions of fact presented by plaintiffs at this point in the litigation, thereby precluding summary judgment. Again, the purpose of summary judgment is to determine whether a genuine issue of material fact exists, not to try a question of fact. To ignore this standard of analysis and mechanically follow cases applying a different, judgment *n.o.v.*, standard rather than the rationale and black letter law of summary judgment stands the concept of summary judgment on its head and results in our appellate court, in effect, trying the case. For these reasons, the trial court erred in granting summary judgment in favor of defendants.

9

¶ 24                                    CONCLUSION

¶ 25    For the foregoing reasons, we reverse the trial court's order granting summary judgment

in favor of defendants and remand this cause for further proceedings.


¶ 26    Reversed and remanded.

2018 IL App (5th) 160239

NO. 5-16-0239

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| JOHN JONES and DEBORAH JONES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Richland County. |
| | ) | |
| v. | ) | No. 13-L-21 |
| | ) | |
| PNEUMO ABEX LLC and OWENS-ILLINOIS, INC., | ) | Honorable |
| | ) | William C. Hudson, |
| Defendants-Appellees. | ) | Judge, presiding. |

---

**Opinion Filed:**     August 10, 2018

---

**Justices:**     Honorable Richard P. Goldenhersh, J.

Honorable John B. Barberis, P.J., and
Honorable Thomas M. Welch, J.
Concur

---

**Attorneys for Appellants**     James R. Wylder, Charles L. Corwin, Stephen F. Wood, Wylder, Corwin, Kelly, LLP, 207 E. Washington, Suite 102, Bloomington, IL 61701

---

**Attorneys for Appellees**     Robert H. Riley, Matthew V. Chimienti, Matthew J. Fischer, Alissa B. Kelso, Riley, Safer, Holmes & Cancila, LLP, Three First National Plaza, 70 W. Madison Street, Suite 2900, Chicago, IL 60602 (attorneys for Owens-Illinois, Inc.); Raymond H. Modesitt, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, 333 Ohio Street, Terre Haute, IN 47807; Robert W. Scott, Jr., Swain, Hartshorn & Scott, 411 Hamilton Blvd., Suite 1812, Peoria, IL 61602-1104; Reagan W. Simpson, Yetter, Coleman, LLP, 909 Fannin, Suite 3600, Houston, TX 77010; Craig L. Unrath, Heyl, Royster, Voelker & Allen, 300 Hamilton Blvd., P.O. Box 6199, Peoria, IL 61601-6199 (attorneys for Pneumo Abex LLC)